IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - X
UNITED STATES OF AMERICA, :
                       :
     Plaintiff,        :
                       :
vs.                 :      Case No. 4:20-cr-168
                       :
CARLOS PADILLA,        :   TRANSCRIPT OF SENTENCING HEARING
                       :
     Defendant.       :
- - - - - - - - - - - - X


                          Courtroom 160, First Floor
                          U.S. Courthouse
                          123 East Walnut Street
                          Des Moines, Iowa
                          Tuesday, December 21, 2021
                          10:01 a.m.


BEFORE:  THE HONORABLE REBECCA GOODGAME EBINGER, Judge


APPEARANCES:

For the Plaintiff:      MACKENZIE BENSON TUBBS, ESQ.
                        United States Attorney's Office
                        U.S. Courthouse Annex
                        110 East Court Avenue, Suite 286
                        Des Moines, Iowa  50309

For the Defendant:      SEAN P. SPELLMAN, ESQ.
                        Spellman Law, P.C.
                        4000 Westown Parkway, Suite 120
                        West Des Moines, Iowa  50266


              TONYA R. GERKE, CSR, RDR, CRR
                United States Courthouse
          123 East Walnut Street, Room 197
             Des Moines, Iowa 50309

1       P R O C E E D I N G S

2               THE COURT:  Thank you.  Please be seated.

3               We are here in the matter of the United States of

4   America versus Carlos Artemio Padilla.  This is case

5   4:20-cr-168.  This is the time and date set for sentencing in

6   this matter.  My name, as you know, is Rebecca Goodgame Ebinger,

7   and I'm the district judge presiding.

8               Would counsel please identify themselves for purposes

9   of the record.

10              MS. BENSON TUBBS:  MacKenzie Tubbs on behalf of the

11  United States.

12              MR. SPELLMAN:  Good morning, Your Honor.  Sean

13  Spellman on behalf of Carlos Padilla seated to my left.

14              THE COURT:  Thank you.

15              And we have with us from the United States Probation

16  Office, United States Probation Officer Connor Perry as well.

17              Mr. Padilla, do you recall being charged originally by

18  a one-count indictment filed on September 17th, 2020, and then

19  by a superseding indictment filed on July 21st, 2021, with the

20  crime of conspiracy to distribute 500 grams or more of a mixture

21  and substance containing a detectable amount of methamphetamine

22  and 50 grams or more of methamphetamine after a previous

23  conviction for a serious drug felony in violation of Title 21,

24  United States Code sections 841(a)(1), 841(b)(1)(A), 846, and

25  851?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  You initially entered a plea of not guilty

3  to that charge, and then on August 13th of 2021, you pleaded

4  guilty to the one-count superseding indictment, and the

5  Government at that time indicated that they would withdraw the

6  notice under 21 United States Code section 851 enhancing the

7  potential penalties for your offense.  Do you recall that, sir?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Ms. Tubbs, do you withdraw the 851 notice

10  at this time?

11          MS. BENSON TUBBS:  Yes, Your Honor.

12          THE COURT:  The Court grants that motion to withdraw.

13          The United States Magistrate Judge talked with you at

14  the time of your plea about the penalties associated with the

15  offense to which you pleaded guilty, and that includes a 10-year

16  mandatory minimum and up to life imprisonment.  Do you recall

17  that, sir?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  The magistrate judge recommended to me

20  that I accept your plea of guilty and adjudicate you guilty, and

21  I did so on September 3rd of this year.  Do you understand,

22  Mr. Padilla, that you're here today for the purpose of being

23  sentenced on your plea of guilty?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Do you continue to acknowledge that you

1  are indeed guilty of the crime charged in Count 1 of the

2  superseding indictment, conspiracy to distribute 500 grams or

3  more of meth mixture and 50 grams or more of methamphetamine?

4  THE DEFENDANT:  Yes, Your Honor.

5  THE COURT:  Before I proceed further with the hearing,

6  I need to confirm that you're fully able to participate here

7  today.  Are you currently under the influence of alcohol?

8  THE DEFENDANT:  No.

9  THE COURT:  Are you under the influence of any illegal

10 substances?

11 THE DEFENDANT:  No, Your Honor.

12 THE COURT:  Are you taking any prescription

13 medications?

14 THE DEFENDANT:  No, Your Honor.

15 THE COURT:  Are you suffering from any mental health

16 or physical illness or ailment that would cause you to be unable

17 to understand and participate in today's hearing?

18 THE DEFENDANT:  No, Your Honor.

19 THE COURT:  If at any time during this hearing,

20 Mr. Padilla, you do not understand something I say or you have a

21 question, would you please stop me and let me know?

22 THE DEFENDANT:  Yes, Your Honor.

23 THE COURT:  The most important thing is that you

24 understand the proceedings.

25 THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  In anticipation of this hearing, the

2    United States Probation Office prepared a presentence

3    investigation report.  I have reviewed that report.  I have

4    reviewed the Government's sentencing memorandum and the

5    defendant's sentencing memorandum and motion for downward

6    variance.  I received initially Exhibits A through E from the

7    defense, and I've now received two additional exhibits, F and G.

8    I have presided over the sentencing of co-defendants in this

9    case and then defendants in related cases as identified on the

10   presentence investigation report, page 2.  I also presided over

11   the trial of Juana Arias Aguilar, who is pending sentencing

12   after being convicted at a jury trial.

13          Are there any other materials that need to be brought

14   to my attention at this time?

15          MS. BENSON TUBBS:  None on behalf of the Government.

16          THE COURT:  Ms. Tubbs, do you have any objection to

17   Defense Exhibits A through G?

18          MS. BENSON TUBBS:  No, Your Honor.

19          THE COURT:  So those are admitted at this time.

20      * * * Defense Exhibits A through G received. * * *

21          THE COURT:  Mr. Spellman, any additional materials?

22          MR. SPELLMAN:  No, Your Honor.  I would only just note

23   for clarity of the record that in our sentencing memorandum, we

24   did withdraw previously filed objections related to paragraphs 1

25   through 13 of our objections to PSR previously filed.

1          THE COURT:  And I went over that filing, and we'll

2     talk about that specifically, but I looked back at ECF Number

3     219 which was your filing of your objections, and by my review,

4     that withdrew all of your factual objections and the derivative

5     legal objections from them; correct?

6          MR. SPELLMAN:  Yes, that's correct, Your Honor.

7          THE COURT:  Thank you, Mr. Spellman.

8          So let's talk about the presentence investigation

9     report in this case.

10          Ms. Tubbs, have you had the opportunity to review the

11    report on behalf of the United States?

12          MS. BENSON TUBBS:  I have, Your Honor.

13          THE COURT:  And does the Government have any

14    outstanding factual objections, corrections, or omissions to

15    bring to the Court's attention?

16          MS. BENSON TUBBS:  No, Your Honor.

17          THE COURT:  Thank you.

18          Mr. Spellman, have you and your client had the

19    opportunity to review the presentence investigation report in

20    this case?

21          MR. SPELLMAN:  Yes, Your Honor.  In this case we had

22    the opportunity to receive a draft report when it was initially

23    filed with the Court.  I promptly sent that to Mr. Padilla with

24    instructions to keep it and maintain it confidential.  We

25    reviewed that document together at least two times.  We then

1  filed objections to the PSR.  We further discussed those

2  objections in preparation of sentencing and made strategic

3  decisions to withdraw certain of those objections, and then

4  ultimately we did review together the final PSR as it exists in

5  its current final format.

6       THE COURT:  As you just noted, there were pending

7  objections that were withdrawn by way of the sentencing

8  memorandum filed at document 235.  At this time do you have any

9  outstanding factual objections, corrections, or omissions to

10  bring to the Court's attention?

11       MR. SPELLMAN:  We do not, Your Honor.

12       THE COURT:  Thank you, Mr. Spellman.

13       Mr. Padilla, we've been talking about the presentence

14  investigation report in this case.  Mr. Spellman explained to me

15  how you all went about reviewing this document.  Do you recall

16  going over the report with Mr. Spellman as he explained?

17       THE DEFENDANT:  Yes, Your Honor.

18       THE COURT:  Have you had a full and fair opportunity

19  to review the material contained in the presentence

20  investigation report?

21       THE DEFENDANT:  Yes, Your Honor.

22       THE COURT:  Mr. Spellman has indicated to me that at

23  this time there are no errors or things that are wrong in the

24  report that he needs to bring to my attention.  Do you

25  understand that, sir?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you agree that the report is factually

3    accurate or correct?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Thank you.

6          Based upon that record, the Court will rely upon the

7    unobjected-to factual information contained in the presentence

8    investigation report for purposes of determining the appropriate

9    sentence to impose in this case.

10         That brings us to a discussion of the advisory

11   guideline calculation.  As we know, the sentencing guidelines

12   are advisory, and the Court treats them as such, but the Court

13   is required to accurately calculate and consider the applicable

14   advisory guideline range.

15         In this case the offense level computation begins on

16   page 18 at paragraph 74 with a base offense level of 38 based

17   upon the amount of converted drug weight involved in this

18   offense, and that is over 90,000 kilos of a converted drug

19   weight.  There's a 4-level upward adjustment applied because the

20   defendant was an organizer or leader of a criminal activity that

21   involved 5 or more participants or was otherwise extensive

22   reflected in paragraph 77.  That results in an adjusted offense

23   level of 42.  There are 2 levels reduced for acceptance of

24   responsibility.

25         Does the Government move for the third level?

1          MS. BENSON TUBBS:  Yes, Your Honor.

2          THE COURT:  The Court grants that motion.  That

3     results in a total offense level of 39.  The defendant qualifies

4     as a criminal history category III.  That results in an advisory

5     guideline range of between 324 and 405 months of imprisonment.

6     Supervised release is recommended by the guidelines at the -- at

7     the statutory mandatory minimum which is 5 years.  Probation is

8     not an option under either the guidelines or statute because of

9     that mandatory minimum that we've previously discussed, and the

10    fine is recommended between 50,000 and 10,000,000 dollars.

11         Does the Government have any objection to those

12    calculations?

13         MS. BENSON TUBBS:  No, Your Honor.

14         THE COURT:  Mr. Spellman?

15         MR. SPELLMAN:  No objection, Your Honor.

16         THE COURT:  Thank you.

17         So the Court will look to that advisory guideline

18    range as one factor to consider in determining the appropriate

19    sentence to impose in this case.

20         I don't believe either party sought a traditional

21    departure; correct, Ms. Tubbs?

22         MS. BENSON TUBBS:  Yes, Your Honor.

23         THE COURT:  Correct, Mr. Spellman?

24         MR. SPELLMAN:  Correct, Your Honor.

25         THE COURT:  That brings us to the ultimate question in

1 the case which is the appropriate disposition.

2          Ms. Tubbs, you had indicated in your sentencing

3 memorandum that you anticipated presenting evidence here today.

4 In light of the withdrawal of the objections, does the

5 Government still intend to present any evidence?

6          MS. BENSON TUBBS:  No, Your Honor.

7          THE COURT:  Thank you.

8          Mr. Spellman, any evidence as to disposition other

9 than the exhibits which the Court has previously reviewed?

10          MR. SPELLMAN:  No other evidence, Your Honor.

11          THE COURT:  Would you like to be heard by way of

12 argument?

13          MR. SPELLMAN:  Yes, please.

14          THE COURT:  Thank you, Mr. Spellman.

15          MR. SPELLMAN:  Thank you.  May it please the Court and

16 counsel.

17          Your Honor, as Mr. Padilla appears here today before

18 the Court, he's 31 years old.  He's of a remarkably young age to

19 be facing such a significant sentence, and my observation of him

20 is that he appreciates the gravity of this moment.  He's been in

21 the custody of the U.S. marshals and housed in the Polk County

22 Jail for coming up on about one year.  It's significant and

23 noteworthy that during that time he's had no write-ups, he's had

24 no reports of violation, and he's been, I guess, as could be

25 described as a model inmate.  Certainly that tends to be at

1   least for a person who was incarcerated during a case like this

2   an indicator of his respect for this situation and his ability

3   to be reverent to the rules which will be upon him now and into

4   the future for him.

5           Certainly, though, he wishes and his family wishes

6   that they could be here in the gallery to support him.  Their

7   support is brought forward to the Court's attention by way of

8   the sentencing exhibits which have been marked and offered and

9   accepted as Exhibits A through G, and it's really a collection

10  of letters which give good insight to the Court.  Every

11  defendant has a story, and I think we take for granted sometimes

12  what the narrative of that story can be in these cases, and at

13  least in Mr. Padilla's situation, there are unique

14  characteristics which thrust him into this position here at this

15  moment before the Court.

16          There's lots of reference to the tragedy which befell

17  his family at the age of five when his father was murdered, and

18  if you were an odds maker, you could have placed the bets at

19  that time and made a prediction or a good bet that the potential

20  for him to end up in this exact situation was quite high.  As he

21  struggled through his early adolescent years into his early

22  teenage years, he struggled with alcohol abuse and drug

23  addiction with chronic marijuana abuse and addiction, and that

24  parlayed into abuse of other drugs, including methamphetamine.

25          One thing that is noteworthy is his family was very

1  helpful in providing some additional insight and photographic

2  collages that we included in our sentencing memorandum, and it

3  shows him as really what people know him for:  a father, a

4  caretaker, and a hard worker.  Rare is the case that a defendant

5  comes before this Court who has and who has maintained a

6  consistent work history.  Granted, we recognize that he was

7  engaged in criminal activity during part of that time, but it's

8  an indicator that he was not deriving a luxurious or extravagant

9  living from his activities.  He worked in the construction-type

10 trade.  He loves that work.  He's eager to embrace additional

11 learning of the trades while he's incarcerated and to return to

12 that profession in the future upon his eventual release.  In

13 fact, when he was arrested on the warrant in this case, he was

14 at work.

15         But nonetheless, he accepts responsibility for his

16 abhorrent conduct.  He recognizes that these are not victimless

17 crimes in the sense that, you know, this methamphetamine was

18 coming here to Iowa, and it was being used by people in the

19 community, and it was causing them legal problems and

20 endangering their health and welfare and creating other risks in

21 the community, and he's -- he recognizes that, and he took for

22 granted the fact that that's -- that's what was occurring in his

23 actions as he's piecemealing this thing along and largely trying

24 to distribute these drugs to subsidize his own addiction while

25 working with a full-time job.

1          But he hopes to be known and remembered as a hard

2    worker, as a father, as a loyal family member, and the letters

3    of support are material in that regard and are a very good

4    reflection of his true character.  We did include for reference

5    a copy of his W-2 to verify some of his wages and earnings, but

6    otherwise the reflections are candid in nature and paint a

7    picture for the Court that's difficult to otherwise ascertain by

8    reading the presentence investigation report.

9          He recognizes his longstanding drug addiction.  He's

10   eager to take steps to better that.  He is very hopeful that he

11   could participate in RDAP while he's incarcerated.

12          In this case, Your Honor, we've recommended a sentence

13   of 180 months.  We realize that's far beneath the guidelines,

14   and we realize the Court has a difficult task at hand at least

15   in comparing his role and in comparison balancing the other

16   sentences imposed in this case, including Mr. Perez, who

17   received a 240-month sentence, but nonetheless at least as it

18   relates to Mr. Padilla and his individualized characteristics,

19   he does lack significant criminal history, although he was

20   penalized within his history for his prior offense which

21   elevated his guidelines.  He nonetheless has had limited contact

22   with law enforcement, and that's significant in terms of his

23   ability to succeed in the future and to reenter the community

24   and be a hardworking, tax-paying citizen.  The offset that we've

25   proposed to the Court in this case was for a minimum term of

1  seven years of supervised release in addition to whatever period

2  of incarceration might be imposed.

3          While he's been incarcerated, clearly these have been

4  difficult times with COVID present and abundant in the Polk

5  County Jail.  There have been no educational opportunities or

6  opportunities for self-betterment or programming, and he's

7  really desiring and eager to embrace those in the future as a

8  part of this sentence.  He's also hopeful to work towards

9  accomplishing his GED and ultimately has a very good vision for

10  his self-betterment.

11          So we're asking the Court here today to vary downward

12  to a degree that the Court would find appropriate.  We're asking

13  the Court to look at a sentence underneath 200 months, although

14  certainly we respect and defer to the Court ultimately in giving

15  consideration to all these unique factors as it relates to

16  Mr. Padilla.  Thank you.

17          THE COURT:  Thank you.

18          Mr. Padilla, now is the time during the hearing where

19  you have the opportunity to speak.  You do not have to say

20  anything, but if you'd like to, the Court will consider it.  Is

21  there anything you'd like to say, sir?  He may remain seated.

22  That's fine.  Thank you.

23          THE DEFENDANT:  Your Honor, first of all, I want to

24  thank you for letting me speak here, and I want to just

25  apologize for everything that I've done, apologize for any --

1  any victims in my -- from my -- from my actions, and whatever

2  you give me I'm just going to do -- how do I explain?  Whatever

3  you give me I will take advantage of all that time and do

4  something good about it and get it -- like I say, get a college

5  degree, get parenting programs for my kids, be a father in their

6  lives, and just I'm so sorry for everything I've done.

7          THE COURT:  Thank you, sir.

8          Ms. Tubbs, on behalf of the United States?

9          MS. BENSON TUBBS:  Thank you, Your Honor.

10          The Government is requesting a guideline sentence in

11  this case and recognizes that that is a substantial 324-month

12  sentence.  That sentence is necessary, however, to reflect the

13  nature and seriousness of this offense as well as Mr. Padilla's

14  role in it.

15          Without Mr. Padilla's actions, this conspiracy could

16  not have taken place.  He specifically orchestrated each and

17  every part of it, and the beginning portions of making the

18  connections in Iowa came from his prior conviction and the

19  connections he made in prison, and that is certainly troubling,

20  that he utilized those connections to make this offense happen.

21  He orchestrated the mailing of numerous packages here to Iowa

22  and put them in the hands of individuals who could take those

23  packages and distribute them in the community, and the amount of

24  methamphetamine that Mr. Padilla is responsible for distributing

25  in this community cause irreparable harm.

He also used many techniques to distance himself from this -- from the acts that he was participating in. He referred to himself by various nicknames to the numerous co-conspirators he was dealing with. He utilized different addresses and utilized different people to wire the proceeds back that he benefited from, and those proceeds were not insignificant. Law enforcement, thanks to their diligent work, were able to piece together at least $12,000 worth of wire transfers and a separate $16,000 worth of wire transfers through a different co-conspirator as reflected through the PSR.

The defendant should be held responsible for the significant nature of this offense and his role in it by a guideline sentence, and that is the Government's recommendation in this case.

THE COURT: Thank you, Ms. Tubbs.

In determining the appropriate sentence to impose in this and every case, the Court is required to consider the factors set forth in Title 18, United States Code section 3553(a). Those factors include the defendant's history and characteristics and the nature and circumstances of the offense.

The Court must also consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to adequately deter future criminal conduct, both for this defendant and for others who might contemplate committing such

1   an offense in the future.

2           The Court has to consider the need for the sentence to

3   protect the public and to provide the defendant with needed

4   educational training or other needs in the most effective

5   manner.  The Court has to consider the sentencing guidelines and

6   the advice they provide as well as the need to avoid unwarranted

7   sentencing disparities among defendants with similar records who

8   have been found guilty of similar conduct.

9           I may not speak about each one of the statutory

10  factors specifically in articulating the reasoning for my

11  sentence, but in determining the appropriate sentence to impose,

12  I have considered each and every one of them.  Ultimately the

13  sentence the Court imposes must be sufficient but not greater

14  than necessary to serve the purposes of sentencing.

15          This is a very serious offense, and the seriousness of

16  the offense is reflected in the congressional mandate that a

17  10-year term of imprisonment at least must be imposed and up to

18  life imprisonment.  And the amount of methamphetamine involved

19  in this conspiracy is well above that statutory mandatory

20  minimum of 500 grams of a mixture or 50 grams of actual.

21          The length of time that this conduct was going on is

22  also notable.  The number of different people the defendant was

23  involved with in distributing and conspiring to distribute this

24  significant amount of methamphetamine here in central Iowa, the

25  number and different ways that the defendant, as the Government

1  noted, distanced himself from this conduct or attempted to, the

2  sophistication of using different addresses, different

3  recipients, different names -- this is an extensive conspiracy

4  that went back to 2018 and continued on for years.

5          This is a crime that has significant impact on the

6  community.  Each one of those packages of methamphetamine

7  represented hundreds of dosage units to people within the

8  central Iowa area who, like the defendant, are drug users and

9  engaged in activity that creates dangerousness for themselves

10 and for those around them.

11         In terms of the defendant's history and

12 characteristics, there are aggravating and mitigating

13 circumstances there.  The defendant has a relatively limited

14 criminal history, as indicated by the defense.  There's one

15 prior possession with intent here in Polk County.  The defendant

16 was on parole for that and absconded from parole, but there are

17 no other interactions with law enforcement that are reflected in

18 the presentence investigation report.  Notably, there's no

19 history of violence that's noted either during the course of the

20 conduct involved in this offense or in the defendant's prior

21 history, and that's notable for someone engaged in this type of

22 large-scale drug trafficking activity.

23         Defendant has significant childhood trauma.  The

24 murder of his father when he was nine -- excuse me -- when he

25 was five years old, the method of that murder, being shot nine

1  times, those are obviously difficult things for any child to

2  overcome and resulted in a lack of youthful guidance for this

3  defendant.

4          He does have strong employment history.

5          There have been no violations in the Polk County Jail

6  which is notable, particularly in light of the length of time

7  that the defendant has been detained and the existence of

8  COVID-19 restrictions which has made the time in the Polk County

9  Jail more challenging.

10         Defendant has long-term substance abuse issues which

11  are well documented in the report, and the Court considers that

12  as well.

13         Counsel, do you know of any legal reason why the Court

14  should not impose sentence at this time?

15         MS. BENSON TUBBS:  No, Your Honor.

16         MR. SPELLMAN:  No, Your Honor.

17         THE COURT:  Based upon the Court's review of the

18  criteria set forth in Title 18, United States Code section

19  3553(a), and the circumstances of this case and for the reasons

20  I have explained, it is the judgment of the Court that the

21  defendant, Carlos Artemio Padilla, is sentenced to 288 months of

22  imprisonment.  That sentence is outside of the advisory

23  guideline range and is imposed for the reasons I previously

24  stated.

25         I have varied downward to a 24-year sentence from the

1  low end of the guideline range, which was 27 years, for the

2  reasons I've stated including the defendant's childhood trauma,

3  his longstanding substance abuse issue, his relative lack of

4  criminal history, the lack of any violence either during the

5  course of this conduct or his history, the lack of any

6  violations while in the Polk County Jail, and the challenges

7  associated with COVID-19 conditions during the lengthy pretrial

8  detention for the defendant.

9         I recognize my authority to vary downward further as

10 advocated for by the defense.  Having considered that option,

11 the Court declines to vary downward further because of the

12 defendant's role in the offense, the need for adequate

13 deterrence, and the relative culpability of this defendant

14 versus the other defendants in this case.  The variance downward

15 is essentially a two-level downward variance.  Any further

16 variance would not adequately reflect the defendant's criminal

17 conduct, promote respect for the law, and indicate the

18 seriousness of the offense despite the mitigating factors that I

19 highlighted.

20        I do not impose a fine, finding that the defendant

21 does not have a reasonable ability to pay a fine.  Restitution

22 is not at issue.  I do impose a $100 special assessment due and

23 payable immediately without interest to the United States Clerk

24 of Court for the Southern District of Iowa.

25        In addition to the term of imprisonment, I will impose

1  the mandatory minimum term of 5 years of supervised release.

2  Within 72 hours of release from the custody of the Bureau of

3  Prisons, Mr. Padilla, you must report in person to the probation

4  office in the district to which you are released.

5          I note that the materials suggest that you would like

6  to go to Washington where members of your family live, and those

7  family members appear to be pro-social individuals who support

8  you and want you to live a law-abiding lifestyle.  By default,

9  you will come back to the Southern District of Iowa where you've

10  been sentenced.  If you wish to go to a different district, I

11  urge you to talk about that with your counselors in the B.O.P.

12  while you are detained because a district has to accept you as a

13  transfer in order for you to be able to go there.  I believe it

14  would be in your interest to do so.  It doesn't sound like

15  you've had strong positive support in California, and certainly

16  the contacts you made here in Polk County contributed to your

17  commission of this offense, so please note that while you are

18  detained.

19          While you're on supervised release, you must not

20  commit any other federal, state, or local crimes; you must not

21  possess any controlled substance unlawfully, and you shall not

22  unlawfully use a controlled substance; you'll be subject to at

23  least one drug test within 15 days of your release and at least

24  2 more thereafter; you must cooperate in the collection of DNA.

25  You are a felon.  You cannot possess a firearm, destructive

1 device, or ammunition either during your term of supervised

2 release or anytime thereafter.

3        You'll be required to abide by the standard conditions

4 of supervised release as set forth by the United States

5 Sentencing Commission, and those will be reflected in the

6 written judgment entered here today as well as the special

7 conditions of supervised release that were unobjected to by the

8 defense and were proposed by the presentence investigation

9 report.  I'll briefly summarize those for you now, Mr. Padilla,

10 but you should note that they'll be implemented and enforced in

11 full as written.  They're in part G of the report beginning at

12 paragraph 158.

13        First, you'll be required to participate in a program

14 of testing and treatment for substance abuse.  Clearly, your

15 history warrants that.  In furtherance of that treatment, you're

16 going to be restricted from the use of alcohol or any other

17 intoxicants while you're on supervision as well.  You must not

18 patronize business establishments where more than 50 percent of

19 their revenue comes from the sale of alcoholic beverages, so

20 bars, taverns, and the like.  If you don't otherwise obtain your

21 GED while you're in custody, you'll be required to work towards

22 that GED on supervision, and you'll be subject to a search

23 condition as well.  That search condition can be effectuated

24 with or without the assistance of law enforcement, including the

25 United States Marshals Service.

1          Both the length of the term of supervision and the

2     conditions I've imposed are based upon an individualized

3     assessment of this defendant's supervision needs after reviewing

4     and considering all of the relevant statutory factors under 18

5     United States Code section 3553(a) and 3563(b).

6          Mr. Spellman, there were a number of requests in the

7     memorandum in regards to designation and programming.  Would you

8     like to be heard on those now?

9          MR. SPELLMAN:  Yes.  Thank you, Your Honor.

10         We made a recommendation for placement at FCI

11    Victorville in California or otherwise designated within

12    California or the western region where he has family, and also

13    we've made recommendations that he be considered for placement

14    in RDAP and for placement in trade programs such as electrical,

15    plumbing, and welding, Your Honor.

16         THE COURT:  Thank you.

17         So the Court will include those recommendations.  I'll

18    recommend that you be designated to FCI Victorville or other

19    location in California or within the western region, that you

20    have the opportunity to participate in the 500-hour residential

21    drug abuse treatment program, and that you be afforded the

22    opportunity to participate in vocational training in welding,

23    the electrical trades, and plumbing trades.

24         Any other recommendations, Mr. Spellman?

25         MR. SPELLMAN:  No, Your Honor.

1          THE COURT:  Thank you.

2          Forfeiture for this defendant?

3          MS. BENSON TUBBS:  No, Your Honor.

4          THE COURT:  And no counts to be dismissed?

5          MS. BENSON TUBBS:  That's correct.

6          THE COURT:  Mr. Padilla, you do have the right to

7   appeal the sentence that I've just imposed.  If you wish to

8   pursue an appeal, you must file a written notice of appeal

9   within 14 days of the entry of judgment.  Do you understand the

10  time limit for filing a notice of appeal, sir?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  In addition, if you wish to pursue an

13  appeal and you cannot afford an attorney, one can be appointed

14  to represent you.  You can also have transcripts of this or any

15  other relevant proceedings made at no cost to you in furtherance

16  of your appeal if you qualify financially.  Do you understand

17  your appeal rights, sir?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Counsel, any matters I failed to address?

20         MS. BENSON TUBBS:  No, Your Honor.

21         MR. SPELLMAN:  No, Your Honor.  Thank you.

22         THE COURT:  Anything further on behalf of the

23  Government?

24         MS. BENSON TUBBS:  No, Your Honor.

25         THE COURT:  On behalf of the defense?

1          MR. SPELLMAN:  Nothing further.

2          THE COURT:  The defendant is committed to the custody

3    of the United States Marshals Service for transportation to the

4    designated Bureau of Prisons facility.

5          Mr. Padilla, I wish you the best moving forward, sir.

6          THE DEFENDANT:  Thank you.

7          THE COURT:  That will conclude the hearing.

8          (Proceedings concluded at 10:34 a.m.)

9

10                      C E R T I F I C A T E
           I, Tonya R. Gerke, a Certified Shorthand Reporter of
11   the State of Iowa and Federal Official Realtime Court Reporter
     in and for the United States District Court for the Southern
12   District of Iowa, do hereby certify, pursuant to Title 28 U.S.C.
     Section 753, that the foregoing is a true and correct transcript
13   of the stenographically reported proceedings held in the
     above-entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
     the United States.
15           Dated at Des Moines, Iowa, February 22, 2022.

16

17                      /s/ Tonya R. Gerke
                        Tonya R. Gerke, CSR, RDR, CRR
18                      Federal Official Court Reporter

19

20                              INDEX

21   EXHIBITS                                              PAGE

22    Defense Exhibits A through G                          5

23

24

25